# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-4301

_____

United States of America

*Plaintiff - Appellee*

v.

Roger Cecil Chambers

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: September 18, 2017
Filed: December 22, 2017
[Published]

_____

Before SMITH, Chief Judge, MELLOY and GRUENDER, Circuit Judges.

_____

PER CURIAM.

Roger Chambers pleaded guilty to possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). The district court[1] sentenced Chambers to 135

_____

[1]The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa.

months' imprisonment. He appeals the sentence, arguing that the district court erred by: (1) applying a five-point enhancement for engaging in a pattern of activity involving sexual abuse or exploitation of a minor under U.S.S.G. § 2G2.2(b)(5), and (2) adding two points to his criminal history score pursuant to § 4A1.1(d) for conduct substantially related to the instant offense while serving under a criminal justice sentence. We affirm.

I. *Background*

In 2006, Chambers pleaded guilty to lascivious acts with a child, in violation of Iowa law. At the time, Chambers lived with his sister's family and occasionally babysat his seven-year-old niece. As summarized by the Iowa prosecutor's minutes of testimony,[2] his niece reported separate instances of sexual abuse by Chambers. The victim described the abuse to a police officer and to the Iowa Department of Human Services. During her interview, the child told interviewers that Chambers "lets her touch his body." Revised Final Presentence Investigation Report at 39, *United States v. Chambers*, No. 4:16-cr-00020-JAJ-CFB-1 (S.D. Iowa Nov. 16, 2016), ECF No. 44. She referred to "[t]he last time this happened." *Id.* She also described in detail the day Chambers last babysat her:

> She was at home with the defendant playing video games in the living room. Uncle Roger went to shave in the bathroom and she went to help him. Then they went back into the living room and played some more video games and then they went downstairs. While she was "sorting things" Uncle Roger began to film her. They went back upstairs and played more video games and watched television. During this time period, the defendant let her touch his private area several times. The first time was when they were playing video games together. The

[2]In Iowa, minutes of testimony "are required [by] law and represent the prosecutor's summary of the evidence that [the prosecutor] expects to present at trial." *United States v. Clayton*, 787 F.3d 929, 933 n.3 (8th Cir. 2015) (citation omitted).

defendant asked her if he could touch her private area and she said, "no, not right now." But he did touch her with his hand in her private area . . . . She told the investigators that she took off her underwear . . . . Her Uncle Roger also touched her private area with his fingers without her underwear being on.

*Id.*

When confronted by law enforcement, Chambers said that he could not remember the events of that day. He tearfully denied any memory of having touched the child's genitalia or having made the child fondle his private parts. Notably, however, Chambers told the interviewing officer that "if that's what she said, I guess I did it." *Id.* at 41. Following his guilty plea, Chambers was sentenced to five years in state prison, followed by a lengthy parole term.

Chambers eventually was released on parole. While on parole in 2013, Chambers attracted law enforcement scrutiny. In April 2011, Chambers began working as a housekeeping aid at the United States Department of Veteran Affairs (VA) Medical Center (VAMC) in Des Moines. In January 2013, after internet activity logs revealed search terms consistent with inquiries for child pornography on one of its computers, the VA initiated an inspection of the Des Moines VAMC. The investigation led to a computer in the center's Environmental Management Services Department break room. Investigators replaced the computer's hard drive and searched the removed drive. The search discovered files containing child pornography in the internet cache folders[3] assigned to Chambers.

---

[3]Internet "cache" files are quasi-temporary files. Cached internet files remain on the hard drive until: (1) the cache directory becomes full and older files are automatically deleted, or (2) the directory is manually purged by the user or the computer system administrator. Eric Law, *A Primer on Temporary Internet Files*, I E I n t e r n a l s ( M a r c h 1 9 , 2 0 1 1 ) ,

In April 2013, the VA investigators removed the newly installed hard drive from the breakroom computer and again found files containing child pornography in Chambers's assigned internet cache folders. The investigation also revealed that at the time of his 2006 arrest, Iowa law enforcement had seized Chambers's laptop computer but proceeded no further at the time. Investigators went back and examined the machine. They found 86 images and one video of child pornography on Chambers's seized laptop.

When confronted, Chambers ultimately admitted to his parole officer that he accessed and viewed child pornography on the VA computer. Subsequently, the court revoked his parole. A federal grand jury then indicted Chambers on two criminal counts: (1) access with intent to view child pornography in 2013, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2); and (2) possession of child pornography in 2006, in violation of 18 U.S.C. §§ 2252(a)(4)(B), (b)(2), and 2256.

Chambers pleaded guilty to the child pornography possession charge. At sentencing on that charge, the government dismissed the remaining charge for access with intent to view. The presentence investigation report (PSR) recommended several enhancements to Chambers's base offense level, including a five-level enhancement under U.S.S.G. § 2G2.2(b)(5) for engaging in a pattern of activity involving sexual abuse or exploitation of a minor stemming from the 2006 state conviction. Chambers objected, arguing lack of a pattern of activity. The district court disagreed, finding by a preponderance of the evidence that the government reliably proved "that the abuse happened on multiple occasions." Sentencing Transcript at 7, *United States v. Chambers*, No. 4:16-cr-00020-JAJ-CFB-1 (S.D. Iowa Nov. 22, 2016), ECF No. 50.

---

https://blogs.msdn.microsoft.com/ieinternals/2011/03/19/a-primer-on-temporary-internet-files/.

The evidence presented included the minutes of testimony and police reports, which included Chambers's own blanket corroboration of the victim's statements.

With a criminal history category of III and a total offense level of 31, the PSR calculated Chambers's Guidelines range between 135 and 168 months. The district court sentenced Chambers to 135 months' imprisonment.

## II. *Discussion*

On appeal, Chambers renews his objection to the § 2G2.2(b)(5) five-level offense enhancement. He also contends for the first time on appeal that the district court erred in assigning him a category III criminal history.

### A. *Sentencing Enhancement under U.S.S.G. § 2G2.2(b)(5)*

To support enhancement of Chambers's sentence under § 2G2.2(b)(5) the government relied on the victim's testimony, the police report, and the Iowa prosecutor's minutes of testimony to establish that he engaged in a pattern of activity involving the sexual abuse or exploitation of a minor. Chambers attacks the reliability of that evidence. He argues that the prosecutor's minutes of testimony were simply part of the charging document and were not meant to serve an evidentiary function. Additionally, he contends that the minutes were unreliable because they contained multiple levels of hearsay—the minutes were the prosecutor's summary of police reports of the victim's *and* Chambers's statements. Finally, he maintains that even if the evidence was reliable, his activity failed to rise to a pattern of activity, as required by § 2G2.2(b)(5).

"We review the district court's application of the sentencing guidelines de novo and its factual findings for clear error." *United States v. Miller*, 511 F.3d 821, 823 (8th Cir. 2008) (citation omitted). "In sentencing, 'the court may consider relevant information without regard to its admissibility under the rules of evidence applicable

at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.'" *United States v. Pepper*, 747 F.3d 520, 524 (8th Cir. 2014) (quoting U.S.S.G. § 6A1.3). "The corroboration of a declarant's statement provides sufficient indicia of reliability to support the statement's probable accuracy." *Id.* (citation omitted).

"[S]entencing judges have 'not [been] restricted to evidence derived from the examination and cross-examination of witnesses in open court but may, consistently with the Due Process Clause . . . , consider responsible unsworn or "out-of-court" information relative to the circumstances of the crime and to the convicted person's life and characteristics.'" *United States v. Wise*, 976 F.2d 393, 398 (8th Cir. 1992) (second alteration in original) (quoting *Williams v. Oklahoma*, 358 U.S. 576, 584 (1959)). And, "[t]he commentary in the Sentencing Guidelines expressly allows reliable hearsay evidence at sentencing." *United States v. Wallace*, 408 F.3d 1046, 1048 (8th Cir. 2005) (per curiam) (citation omitted). Layers of hearsay may be used if corroborated. *See United States v. Shackelford*, 462 F.3d 794, 796 (8th Cir. 2006) (per curiam).

Here, Chambers himself corroborated the victim's statements and effectively admitted to the crime. Chambers told the interviewing officer multiple times that "if [the victim] had said this happened, then it must have." Revised Final Presentence Investigation Report at 41. Averring that "obviously [he had] done something [he] had no control over," Chambers nevertheless "trust[ed] what [the victim] sa[id]." *Id.* Having accepted his victim's veracity at the time of the incident, Chambers cannot now attack her statements' reliability while simultaneously claiming no memory of the events.

Further, "[t]he established practice in Iowa is . . . to examine the entire record, *including the minutes of testimony*, when determining whether a factual basis exists

for a guilty plea." *Velez v. Clarinda Corr. Facility*, 791 F.3d 831, 836 (8th Cir. 2015) (emphasis added) (citing *State v. Finney*, 834 N.W.2d 46, 62 (Iowa 2013); *State v. Schminkey*, 597 N.W.2d 785, 788 (Iowa 1999)). Thus, contrary to Chambers's claim, Iowa courts frequently use minutes of testimony to establish factual bases for guilt. *State v. Velez*, 829 N.W.2d 572, 576 (Iowa 2013). The district court committed no error when it relied on the corroborated minutes of testimony. *See United States v. Clayton*, 787 F.3d 929, 936–37 (8th Cir. 2015) (finding that the district court's reliance on minutes of testimony in conjunction with other evidence contained sufficient indicia of reliability).

Chambers next contends that even if the evidence was reliable, the government failed to establish that he engaged in a pattern of activity of child sexual abuse under U.S.S.G. § 2G2.2(b)(5). He maintains that the government failed to prove that the abuse happened on more than one occasion. Moreover, only one instance of abuse occurred on the subject day. Chambers likened the child abuse to an assault episode, where a punch and kick during a fight together constitute a single assault.

Chambers is wrong. As the district court explained:

> [A] pattern of activity involves the sexual abuse or exploitation of a minor means any combination of two or more separate instances of sexual abuse or sexual exploitation of a minor by the defendant[,] whether or not the abuse or exploitation occurred during the course of the events, involved the same minor, or resulted in a conviction for such conduct.

Sentencing Transcript at 7. No temporal limitation restrains the trigger of this Guidelines provision. *See United States v. Woodard*, 694 F.3d 950, 953–954 (8th Cir. 2012) (joining the First, Third, Fifth, Sixth, Seventh, Ninth, and Eleventh Circuits in holding that § 2G2.2(b)(5) contains no temporal limitation and conduct separated by

19 years could trigger the enhancement). Moreover, in the assault context, even when two offenses occurred "within minutes of each other," they can be "separate and distinct criminal episodes that did not result from a continuous course of conduct." *United States v. Hamell*, 3 F.3d 1187, 1191 (8th Cir. 1993) (citing similarly held cases in the Fifth, Sixth, Seventh, and Tenth Circuits). "[A] criminal offense is a distinct criminal episode when it occurs in a different location and at a different time." *United States v. Chappell*, 704 F.3d 551, 552 (8th Cir. 2013). Indeed, in the context of sentencing under the Armed Career Criminal Act, we held that "under our case law, to prove that two offenses are sufficiently separate and distinct . . . , it is *sufficient* (although, not necessary) to show that some time elapsed between the two [acts]." *United States v. Willoughby*, 653 F.3d 738, 743 (8th Cir. 2011) (citation omitted).

Here, substantial time separated the instances of abuse. The district court found by a preponderance of the evidence that Chambers sexually abused his niece on "multiple occasions." Sentencing Transcript at 7. The victim "referred to the last time it happened. She referred to a separate incident earlier in the day and later that day." *Id.* Although Chambers argued otherwise, he himself corroborated the victim's statements. In light of the testimony showing several instances of abuse, the district court did not clearly err in finding that Chambers engaged in a pattern of activity of child sexual abuse within the meaning of § 2G2.2(b)(5).

## B. *Criminal History Category*

Chambers argues for the first time on appeal that the district court erred by relying on conduct from the dismissed count to calculate his Sentencing Guidelines range. Taking this conduct into account, the district court increased Chambers's criminal history from category II to III.

Because Chambers did not preserve this error for appellate review, we "review[] only for plain error." *United States v. Pirani*, 406 F.3d 543, 549 (8th Cir. 2005) (en banc). Under plain error review,

> there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*Id.* at 550 (quoting *Johnson v. United States*, 520 U.S. 461, 466–67 (1997)).

The Guidelines direct that two criminal history points be added "if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S.S.G. § 4A1.1(d). Conduct that is part of the instant offense means *any relevant conduct* under the provisions of § 1B1.3. *See* U.S.S.G. § 4A1.1 cmt. n.4 ("Two points are added if the defendant committed any part of the instant offense (i.e., *any relevant conduct*) while under any criminal justice sentence . . . . " (emphasis added)); *United States v. Myers*, 598 F.3d 474, 477 (8th Cir. 2010) ("'Conduct that is part of the instant offense' means 'relevant conduct to the instant offense under the provisions of § 1B1.3 (Relevant Conduct).'" (quoting U.S.S.G. § 4A1.2 app. n.1)). We have held that nearly ten-year-old conduct may be relevant conduct. *See United States v. Starr*, 533 F.3d 985, 1000 (8th Cir. 2008).

Relevant conduct may stem from a common scheme or plan. "For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, *common purpose*, *or similar modus operandi*." U.S.S.G. § 1B1.3 cmt. n.5(B)(i) (emphasis added). The district court may consider uncharged,

dismissed, and even acquitted conduct at sentencing. *See, e.g.*, *United States v. Whiting*, 522 F.3d 845, 850 (8th Cir. 2008); *United States v. Bradford*, 499 F.3d 910, 919 (8th Cir. 2007), *abrogated on other grounds by United States v. Villareal–Amarillas*, 562 F.3d 892, 896 (8th Cir. 2009).

Here, Chambers objects to the district court's use of the facts underlying the dismissed charge to compute his criminal history. Chambers argues that the dismissed offense—accessing and viewing child pornography on a work computer station—was not relevant conduct to possession of child pornography. First, he asserts that the offenses could not be part of a "common scheme or plan" under § 1B1.3 because the two offenses occurred seven years apart. Second, Chambers argues that possessing child pornography while at home cannot be considered "substantially connected to" accessing and viewing child pornography while at work. Third, Chambers argues that the sole commonality between the two events—pornography—is too general to constitute a common scheme. Lastly, Chambers argues that because the two offenses occurred seven years apart, the acts were not regular acts, nor could they constitute the same course of conduct.

Chambers's arguments are without merit. Chambers was under a criminal justice sentence—parole for lascivious acts with a child—when he committed the relevant conduct to the instant offense in 2013. Although separated by seven years, Chambers's possession of child pornography and his accessing child pornographic material were both aimed at a common purpose—viewing child pornography. Further, Chambers employed the same means to access child pornographic materials. He used a computer to search, access, and download child pornography. Chambers's conduct in each instance was substantially related through a common purpose and met the requirements of a common scheme or plan under § 1B1.3.

-10-

Chambers attempts but fails to distinguish possession-of-child-pornography offenses and access-with-intent-to-view offenses by characterizing one as "possessing at home" and the other as "accessing at work." Here, the location is immaterial. In both instances, his goal was to view child pornography. In both instances, Chambers actively sought out not just generic pornography but videos of children forced to perform sex acts.

Chambers's offense of accessing child pornography was relevant conduct to the child pornography possession offense for purposes of U.S.S.G. § 4A1.1(d). Chambers committed the instant offense while serving a parole term. We find no error, plain or otherwise, and affirm the district court's adding two points to Chambers's criminal history score for the dismissed 2013 charge of access with intent to view child pornography.

### III. *Conclusion*

Accordingly, we affirm the district court.

_____