# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 18-1144

———————————————

United States of America

*Plaintiff - Appellee*

v.

Joe Horning, also known as Joe Louis Horning

*Defendant - Appellant*

——————

Appeal from United States District Court
for the Southern District of Iowa - Council Bluffs

——————

Submitted: December 10, 2018
Filed: March 14, 2019
[Unpublished]

——————

Before LOKEN, MELLOY, and ERICKSON, Circuit Judges.

——————

PER CURIAM.

In 2017, Defendant Joe Horning pled guilty to accessing or attempting to access child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). The

district court[1] sentenced Horning to 188 months' imprisonment after applying a five-level enhancement under United States Sentencing Guidelines ("U.S.S.G.") § 2G2.2(b)(5) for "engag[ing] in a pattern of activity involving the sexual abuse or exploitation of a minor." Horning appeals, arguing the district court erred in finding the evidence sufficient to establish a pattern of child sexual abuse. We affirm.

## I. Background

Prior to Horning's sentencing, a presentence investigation report ("PSR") was created. The PSR recommended a number of enhancements, including the five-level enhancement for engaging in a pattern of child sexual abuse that is at issue in this case. The basis for that enhancement was Horning's 2001 Iowa conviction for third-degree sexual abuse of a seven-year-old girl. At sentencing, Horning objected to the five-level enhancement, arguing that the single 2001 conviction did not establish that he had engaged in a *pattern* of child sexual abuse, which is defined as "any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor." U.S.S.G. § 2G2.2(b)(5) cmt. n.1. To support the enhancement, the government offered five exhibits, including a certified copy of the state presentence report ("State PSR") from Horning's sentencing for the 2001 conviction.

The State PSR contained an official version of the events, Horning's version of the events, and the victim's version of the events. The government argued that both the official version of the events and the victim's version of the events established that Horning had engaged in a pattern of child sexual abuse. For instance, the official version, which was created by the Audubon Police Chief and a Department of Human Services Child Protective worker, noted that "Horning had told

_____

[1] The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

-2-

[Victim] not to tell about other times because they would get in trouble." And, the victim's version, which was provided by the victim's mother, stated that "[Victim's father] asked if [Horning] had done this before and [Victim] said that he had." Horning countered that both the official version and the victim's version of the events were not reliable for sentencing purposes.

The district court found that there was "sufficient indicia of reliability for the official version and the victim's version to be admitted." The court first noted that state PSRs are prepared by order of the court and are relied upon by state court judges. It then found that the official version detailed a tight timeline of events which "heighten[ed] the reliability of the information contained there." Finally, the district court determined that, while Horning's version of the events "states, 'I didn't do anything intentionally,' the facts he admit[ted] to are . . . facts that show a pattern of sexual conduct beyond one instant interaction." Finding the State PSR reliable, the district court concluded there was sufficient evidence that Horning had engaged in a pattern of child sexual abuse and applied the five-level enhancement. The enhancement resulted in a Guidelines range of 188 to 235 months' imprisonment and the district court sentenced Horning to 188 months' imprisonment. Without the enhancement, the Guidelines range would have been 120 to 137 months' imprisonment.

## II. Standard of Review

"We review the district court's application of the Guidelines and imposition of sentencing enhancements de novo." United States v. Norwood, 774 F.3d 476, 479 (8th Cir. 2014). We review the district court's "factual findings for clear error." United States v. Griffin, 482 F.3d 1008, 1011 (8th Cir. 2007).

## III. Discussion

"In sentencing, 'the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.'" United States v. Pepper, 747 F.3d 520, 524 (8th Cir. 2014) (quoting U.S.S.G. § 6A1.3). "The corroboration of a declarant's statement provides sufficient indicia of reliability to support the statement's probable accuracy." Id.

We focus on the reliability of the State PSR's official version of events because, alone, it is sufficient to establish that Horning engaged in a pattern of child sexual abuse. The official version first describes the events that served as the basis for Horning's 2001 conviction. It notes that while Horning was babysitting the victim at her house, he touched her genitals with his fingers, mouth, and genitals. After Horning left, she immediately reported the abuse to her father. Her parents then took her to the hospital where doctors discovered injuries consistent with her report. The official version goes on to describe additional events that suggest Horning engaged in a pattern of child sexual abuse. It notes that the victim reported "Horning had told her not to tell about other times" and briefly describes additional instances of sexual abuse, including Horning performing oral sex on the victim and Horning asking the victim to masturbate him.

Though hearsay, the official version had sufficient indicia of reliability to be used by the district court. Indeed, Horning's own version of the events corroborates the official version. See United States v. Chambers, 878 F.3d 616, 620 (8th Cir. 2017) (finding district court did not err in relying on victim's statements as evidence because the defendant "himself corroborated the . . . statements and effectively admitted to the crime"). For instance, Horning states in his version of events that (1) "I might've, when I done blow kisses . . . I mighta went down a little bit;" (2) "If it did hap, that was just I got too close of blowin' her stomach;" (3) "[S]he's mighta

-4-

grabbed my [genitals] before;" (4) "I'm sorry if it all comes down to that I done somethin' to her." These statements arguably constitute admissions. But, at the very least, they support the official version's "probable accuracy." Pepper, 747 F.3d at 524. Thus, the district court did not err in finding the official version reliably established that Horning engaged in a pattern of child sexual abuse.

## IV. Conclusion

Accordingly, we affirm the judgment of the district court.

_____