# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1766
_____

United States of America

*Plaintiff - Appellee*

v.

Salvatore Lawrence Bruno

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Council Bluffs
_____

Submitted: January 14, 2020
Filed: July 6, 2020
[Unpublished]
_____

Before SMITH, Chief Judge, LOKEN and GRUENDER, Circuit Judges.
_____

PER CURIAM.

Salvatore Bruno pleaded guilty to possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2). At sentencing, he objected to portions of the offense conduct that described his relationship with B.H. and requested a

below-Guidelines sentence. The district court[1] denied both parties' requests for sentencing variances. The court ultimately sentenced Bruno to 97 months' imprisonment, the Guidelines maximum. Bruno appeals. We affirm.

## I. *Background*

A mother and her young daughter, B.H., rented a room for a few years from Bruno and his wife at the couple's former home in Council Bluffs, Iowa. After school, B.H. typically rode a school bus to Bruno's house and stayed with him until her mother arrived. At some point, it was reported to authorities that B.H. had been sexually abused by someone other than Bruno, and an investigation ensued. B.H. attended two interviews as part of the investigation: one in March 2017 and another in January 2018. The allegations against Bruno came to light during the course of these two interviews.

On March 31, 2017, an investigative interviewer asked seven-year-old B.H. "if she had ever seen any photos of what another perpetrator had done to her." Child Abuse Assessment Summ. at 8, *United States v. Bruno*, No. 1:18-cr-00042-RGE-HCA (S.D. Iowa Aug. 8, 2018), ECF No. 20. She responded affirmatively and told the investigator that Bruno[2] had shown her pictures that included "'Boo-Boo's' . . . of grown-ups." *Id.* She then disclosed a secret that she had with Bruno: Bruno wiped her after she went to the bathroom while her mother was away. She also revealed that Bruno gave her baths or showers.

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

[2]During the interviews, B.H. referred to Bruno as "Papa." *See* Final Presentence Investigation Report (PSR) at ¶ 11, *United States v. Bruno*, No. 1:18-cr-00042-RGE-HCA (S.D. Iowa Mar. 21, 2019), ECF No. 54.

On January 2, 2018, B.H. answered follow-up questions regarding her earlier comments about Bruno from the March 2017 interview. B.H. further disclosed that she had seen more obscene photos, usually while sitting on Bruno's lap as he searched for images on the internet. She described one image as depicting a girl's external genital area and another image as showing a female teenager's bare chest. She indicated that she was around five, six, or seven years old during this time. She also mentioned again that she and Bruno had a secret about him wiping her after she went to the bathroom. This information was passed on to law enforcement.

Based on these facts, law enforcement obtained and executed a search warrant at Bruno's home and seized two memory cards, a computer, a hard drive, and a notebook belonging to Bruno. One memory card contained 689 child-pornography images, which portrayed sexually abused female children from infancy to age five. A digital camera was used to take at least 225 photos of these images. "These images were viewed on a computer, a camera was then used to take a picture of the image on the computer screen, and the image was saved on the camera's memory card." Appellee's Br. at 8 (citing PSR at ¶ 21). One of the dates captured by the camera included a date in mid-July 2015—near B.H.'s fifth birthday. The other memory card "contained two of the same image," showing "a nude minor female on a bed in a bondage position." *Id.* (citing PSR at ¶ 23). This image "was also taken with a camera while the image was displayed on a computer screen and then saved to the memory card." *Id.* (citing PSR at ¶ 23).

Additionally, a program called Anonymizer Universal had been installed on Bruno's computer. This program allows users to conceal their internet protocol address, physical location, and internet browsing history. Law enforcement then inspected a notebook that contained the username and password to the program.

Furthermore, Bruno's computer had been used to visit provocative websites such as tinynakedteens and virginyoungforum, and law enforcement also identified child exploitation material that had been downloaded.

Lastly, the computer's hard drive contained 149 images of child pornography; however, thousands of images and 39 videos depicting child pornography had been deleted.

Next, Bruno talked to law enforcement about his relationships with B.H. and her mother, his computer activity with B.H., and his debilitating illnesses. He acknowledged that he would sometimes feed, dress, bathe, and even wipe B.H. after she used the bathroom. He also told law enforcement that he and B.H. had played computer games and that he had searched for pornography of women between the ages of 12 and 90. He denied viewing pornography for sexual gratification and asserted that he had never shown any pornographic images to B.H.

Although admitting that B.H. did not lie, Bruno did not explain why B.H. disclosed that he had shown her pornographic pictures. He attempted to explain B.H.'s knowledge of the images by claiming that she had seen photos of women from medical books he possessed from his prior study of forensics. During an interview with the Iowa Department of Human Services, Bruno also revealed that he had shown B.H. an online clinical photo of a female child's genital area to educate her about how babies are born. He further claimed that anything found on his computer was strictly for medical purposes and was not pornography.

In November 2018, Bruno pleaded guilty to possession of child pornography. He filed objections to the PSR and a similar sentencing memorandum. He also submitted two letters of support from B.H.'s mother. At the sentencing hearing, Bruno clarified that he was objecting to the characterizations and interpretation of his relationship with B.H.—specifically, those found in paragraphs 11, 119, and 120 of

the final PSR. In reply to Bruno's objections, the government highlighted the Child Protective Services Report (CPSR) that was offered into evidence at Bruno's detention hearing.

The district court found that B.H.'s statements in the CPSR were credible and reliable, concluding that the CPSR had substantiated the information found in paragraph 11 of the final PSR.[3] The final PSR set Bruno's advisory Guidelines range at 78 to 97 months' imprisonment. The court denied the parties' requests for a sentence outside of the Guidelines range. The court announced that it had considered the statutory sentencing factors found in 18 U.S.C. § 3553(a), the Guidelines, aggravating factors, and mitigating circumstances in explaining the sentence imposed.

As for the aggravating factors, the district court considered the amount of child pornographic material found, the unobjected-to portions of the final PSR, the offense conduct duration, how the images were saved, the types of websites accessed, the number of child victims involved, the victim impact statements, Bruno's behavior toward B.H., and his apparent minimization of the offense. The court further noted that Bruno's lack of criminal history was reflected in the Guidelines range. As for the mitigating factors, the court discussed Bruno's age, health condition, military service, and letters of support. The court sentenced Bruno to 97 months' imprisonment, a within-Guidelines sentence at the top of the range.

## II. *Discussion*

Bruno, on appeal, argues that the district court procedurally erred when imposing his sentence and that it also imposed a substantively unreasonable sentence. First, he contends that the court procedurally erred in finding that he showed child

---

[3]Paragraphs 119 and 120 of the final PSR summarized the content of paragraph 11 and discussed factors that may have warranted a sentencing departure and variance.

pornography to B.H. and in denying him a downward variance based on this erroneous fact finding. He claims that the government failed to prove by a preponderance of the evidence that B.H. was shown child pornography.

Second, Bruno argues that the district court imposed a substantively unreasonable sentence by failing to properly weigh the relevant factors and by committing a clear error of judgment. He requests that we remand this case to the district court and instruct it to grant him a downward variance.

## A. *Procedural Error*

"On appeal, we will review a sentence for an abuse of discretion, giving due deference to the district court's decision." *United States v. Zastrow*, 534 F.3d 854, 855 (8th Cir. 2008) (internal quotation omitted). "First, we will ensure that the district court did not commit a significant procedural error, such as . . . selecting a sentence based on clearly erroneous facts . . . ." *Id.* (internal quotation omitted). "A district court's application of the advisory guidelines is reviewed de novo, while findings of fact are reviewed for clear error." *Id.* at 856 (internal quotation omitted).

In its reply to Bruno's objection to portions of the offense conduct, the government referenced the CPSR to substantiate that Bruno had inappropriately accessed child pornography and had shown it to B.H. The record reflects that the district court carefully considered Bruno's objection but validly overruled it. The court found that the CPSR—which Bruno did not object to—substantiated the offense conduct listed in the final PSR. Further, the court correctly determined that the unobjected-to portions of the final PSR also established that Bruno had accessed child pornography when B.H. lived at his former home.

"In sentencing, 'the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable

-6-

accuracy.'" *United States v. Chambers*, 878 F.3d 616, 620 (8th Cir. 2017) (per curiam) (quoting *United States v. Pepper*, 747 F.3d 520, 524 (8th Cir. 2014)). Here, the district court found that the statements contained in the CPSR were reliable based on corroborating evidence. This evidence included the nature and number of child pornographic images found. Plus, some of these images were downloaded and stored while B.H. lived at Bruno's previous residence. Accordingly, the district court did not clearly err in finding by a preponderance of the evidence that Bruno showed child pornography to B.H. No procedural error occurred.

## B. *Substantive Reasonableness*

"If the district court's decision is procedurally sound, then we will consider the substantive reasonableness of the sentence imposed, applying an abuse-of-discretion standard." *Zastrow*, 534 F.3d at 855 (internal quotation omitted). "A mechanical recitation of the § 3553(a) factors is unnecessary, however, particularly when a judge elects simply to apply the advisory guideline range to a particular case." *Id.* (internal quotation omitted). "A district court abuses its discretion when it (1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (internal quotations omitted).

"[W]e presume that a sentence imposed within the advisory guidelines range is reasonable." *United States v. Burns*, 834 F.3d 887, 890 (8th Cir. 2016). "It is 'the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable.'" *Id.* (quoting *Feemster*, 572 F.3d at 464).

Here, the district court expressly considered the § 3553(a) factors. The court explained the basis for imposing a 97-month sentence, the maximum of Bruno's

Guidelines range. It thoroughly examined the factors and applied them to Bruno and his offense conduct. Specifically, the court cited the large quantity of child pornography recovered during the investigation, Bruno's methodology for searching and saving the material, and the substantial harm to his victims.

In considering Bruno's mitigating circumstances, the district court noted that Bruno did not provide evidence of diminished capacity based on his health and medications. The court acknowledged Bruno's age, military service, and support letters from B.H.'s mother but concluded that those facts did not warrant a downward variance. In this case, the court properly weighed the appropriate factors, did not commit a clear error of judgment, and was not required to grant a downward variance. The court's sentence was not substantively unreasonable, and we find no abuse of discretion.

### III. *Conclusion*

Because we discern no error in the district court's sentencing, we affirm the district court's judgment.

_____